# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JOYCE J. TIMMONS, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-06-546-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

## OPINION AND ORDER

Plaintiff Joyce J. Timmons (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 7, 1971 and was 34 years old at the time of the ALJ's decision. She completed her education through the eighth grade. Claimant has no past relevant work. Claimant alleges an inability to work beginning January 1, 2001 due to post traumatic stress syndrome, schizophrenia, depression, anxiety, borderline intelligence, rheumatoid arthritis, stiffness in a finger after surgery, and migraine headaches.

**Procedural History**

On May 17, 2004, Claimant protectively filed for supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On October 25, 2005, Claimant appeared at a hearing before ALJ Lantz McClain in McAlester, Oklahoma. By decision dated May 12, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On October 27, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found Claimant had a substance use disorder which, if discontinued, would result in a residual functional capacity ("RFC") sufficient to perform a significant number of jobs in the national economy.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to adequately develop the record regarding Claimant's mental impairments; (2) arriving at an RFC which was not based upon substantial evidence; (3) finding Claimant's record of substance

4

abuse was material to his disability determination; and (4) *de facto* reopening Claimant's earlier application.

**Development of the Record of Claimant's Mental Impairments**

Claimant contends the ALJ failed to adequately develop the record of Claimant's alleged mental impairments by obtaining consultative IQ testing. Claimant's mental health treatment began on July 9, 2001 when she was treated by Dr. Jeanolivia Grant for depression, among other ailments. Dr. Grant prescribed Prozac for Claimant. (Tr. 396). On September 26, 2001, Claimant reported, however, that she was not taking the Prozac because it kept her "moody." (Tr. 392). On October 8, 2001, Claimant was attended by Dr. Grant. Claimant stated she was not on anti-depressants but is still depressed. Dr. Grant noted a diagnosis of alcohol dependence. (Tr. 388). On October 22, 2001, Claimant complained of depression, insomnia, low energy, low self-esteem, poor concentration and difficulty making decisions. The physician's notes indicate Claimant suffered from substance abuse, in remission. Claimant was also diagnosed with mood disorder with depressive symptoms and major depressive disorder. (Tr. 389).

On August 13, 2002, Claimant sought treatment for depression, mood swings, and anxiety. Claimant informed the counselor, Gary Cunningham, that she becomes anxious and turns to drinking beer. She reported having alcohol abuse problems. Mr. Cunningham noted

Claimant's mood is dysphoric and that she was in the process of being admitted for long term treatment. He noted Claimant was almost to the point of being tearful, though not suicidal. (Tr. 373).

On November 4, 2002, Claimant underwent a consultative psychological evaluation by Patricia J. Walz, Ph.D., a clinical psychologist. Dr. Walz estimated Claimant's IQ at between 65 and 75. Her diagnosis was Axis I: Major Depression, Recurrent, with Psychosis vs. Schizoaffective Disorder. History of Drug and Alcohol Abuse, Reportedly in Remission. Axis II: Mild Mental Retardation vs. Borderline Intellectual Functioning. Personality Disorder with Obsessive-Compulsive and Paranoid Traits. (Tr. 209).

On December 12, 2002, Claimant was again attended by Dr. Grant, complaining of headaches and depression. Dr. Grant prescribed Prozac. (Tr. 341).

On June 12, 2003, Claimant sought treatment at the Choctaw Clinic under the care of Dr. James Howard. Dr. Howard diagnosed her with a mood disorder and treated her with Prozac, Risperdone, and Ativan. (Tr. 295).

On February 20, 2004, Dr. Howard again attended Claimant. He diagnosed Claimant with Major Depressive Disorder, Recurrent, Unspecified. Dr. Howard continued treating Claimant with Risperdone and Ativan. (Tr. 269).

On April 16, 2004, Claimant was attended by Dr. Angela Orlino. Dr. Orlino diagnosed Claimant with chronic pain, a general anxiety disorder, and migraine headaches. (Tr. 265-66).

On May 4, 2004, Claimant was admitted for treatment of depression at the Carl Albert Community Mental Health Center on an emergency detention order. Claimant was treated by Dr. Kenneth Williams. He initially diagnosed Claimant at Axis I: Dysthymia, Post Traumatic Stress Disorder, Methamphetamine Abuse, Alcohol Abuse; Axis II: Deferred; Axis III: Arthritis and Asthma; Axis IV: Problems with social environment; Axis V: GAF: 36. Claimant stated she had been molested as a child, used methamphetamine and alcohol since age 13, and attempted suicide by overdose on four occasions, although she claimed she was not suicidal at admission. (Tr. 240-242).

At discharge on May 6, 2004, Dr. Williams found Claimant's condition to be improved with a guarded prognosis. His final psychiatric diagnosis at Axis I: Depressive Disorder, Post Traumatic Stress Disorder, Methamphetamine Abuse, Alcohol Abuse; Axis II: No diagnosis; Axis III: Arthritis and Asthma; Axis IV: Problems with social environment; Axis V: GAF: 50. (Tr. 243).

On May 11, 2004, Claimant again was attended by Dr. Howard. He continued Claimant on medication, maintaining his prior diagnosis of Major Depressive Disorder, Recurrent, Unspecified.

(Tr. 258).

On September 21, 2004, Claimant told Dr. Jimmie W. Taylor that she could not work due to schizophrenia. Dr. Taylor's impressions included schizophrenia by history, degenerative joint disease low back, question of agaraphobia, question of paranoia, decreased visual acuity. He recommended a psychological consult. (Tr. 402-404).

On November 9, 2004, Claimant was examined by Dr. Mitchell Christopher. He noted Claimant was anxious and prescribed Bupropion and Lorazepam. (Tr. 451-452).

On July 1, 2005, Claimant was admitted to the Carl Albert Community Mental Health Center, complaining that she felt like hanging herself. The initial diagnosis by Dr. Don M. Quiver at Axis I: Dysthymia, Post Traumatic Stress Disorder, Methamphetamine Abuse, Alcohol Abuse; Axis II: No diagnosis; Axis III: Arthritis and asthma; Axis IV: Problems with primary support group; Axis V: GAF: 20. (Tr. 480). Dr. Quiver's final diagnosis was much the same, except Claimant's GAF had increased to 50. (Tr. 481).

In follow up treatment with Dr. Williams in August of 2005, Claimant was noted as looking anxious with features of depression. Dr. Williams diagnosed Claimant with Post Traumatic Stress Disorder and treated her with medication. His prognosis for Claimant was guarded. (Tr. 477).

On March 24, 2006, Claimant was again admitted to the Carl Albert Community Mental Health Center on a complaint of depression. She was attended by Dr. Charles Van Tuyl. Dr. Van Tuyl's initial psychiatric diagnosis was Axis I: Alcohol Dependence, Methamphetamine Abuse, Bipolar Disorder, depressed phase; Axis II: No diagnosis; Axis III: Status post hysterectomy. Arthritis of joints and back. Status post surgical repairs of tendons of right hand secondary to accidental knife cut. She also has asthma; Axis IV: Problems with social environment; Axis V: Current GAF: 36. Highest GAF in the past year: Not known. (Tr. 30-32). Dr. Van Tuyl's final diagnosis was Axis I: Alcohol Dependence, Methamphetamine Abuse, Bipolar Disorder, depressed phase; Axis II: No diagnosis; Axis III: Status post hysterectomy. Arthritis of joints and back. Status post surgical repairs of tendons of right hand secondary to accidental knife cut. She also has asthma; Axis IV: Problems with social environment; Axis V: Current GAF: 36. Highest GAF in the past year: Not known. Dr. Van Tuyl released Claimant on March 30, 2006 to follow up at the Stigler Mental Health Clinic. Dr. Van Tuyl prescribed Wellbutrin and Depakote. (Tr. 32-33).

In his decision, the ALJ found Claimant suffered from severe impairments of slight obesity, mild to moderate chronic obstructive pulmonary disease, depression, borderline intellectual functioning,

personality disorder, and +RA factor. (Tr. 22). He also found many of Claimant's depressive syndrome would not be severe absent her substance abuse. (Tr. 24). However, the ALJ found that the severe impairments of obesity and borderline intellectual functioning found at step two would have existed regardless of Claimant's substance abuse. Id.

Claimant contends the ALJ erred in not obtaining a consultative examination to ascertain the extent of the limitations upon Claimant's intellectual functioning. Specifically, Claimant asserts Dr. Walz had estimated Claimant's IQ in the range of between 65 and 75 and diagnosed Claimant with mild mental retardation vs. borderline intellectual functioning. (Tr. 206-209). In order to engage in a proper step three analysis regarding Claimant's intellectual limitations, the ALJ should have ordered a consultative IQ examination since the information was not available in the medical record. Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997). Of most concern to this Court is the fact a valid IQ score between 60 and 70 coupled with another severe physical or mental impairment would meet a listing. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05C. Since the ALJ already found other severe impairments existed without considering Claimant's substance abuse, the IQ information was critical to determine whether Claimant met Listing 12.05C at step three. On remand, the ALJ

10

shall order such a consultative examination.

## RFC Evaluation

Claimant also contends the ALJ's RFC evaluation failed to consider her severe social functioning problems. The ALJ did find that Claimant "has some limitations in her ability to get along with others and relate to the public." (Tr. 24). The record is replete with references to Claimant's inability to cope with her social environment. Indeed, Claimant was evaluated by the state agency professional, Dr. R.E. Smallwood who found marked limitations in Claimant's ability to interact appropriately with the public. (Tr. 426). Nothing in the record associates this restriction with her substance abuse.

Further, in his hypothetical questioning of the vocational expert, the ALJ only included "minimal contact with the public" as a social restriction. (Tr. 520). On remand, the ALJ shall fully evaluate the medical evidence regarding Claimant's limitations on social functioning.

## Consideration of Claimant's Substance Abuse

Claimant contends the ALJ improperly determined she did not suffer from a disability absent Claimant's substance abuse. Claimant contended at the hearing that she had not used any illicit substances for the prior six months. Despite this statement, Claimant testified her conditions persisted. (Tr. 517-518).

11

Additionally, the ALJ stated Claimant's GAF increased from 36 to 50 during her stay at the Carl Albert facility and attributed this increase to sobriety during her stay. (Tr. 26). However, during her first hospitalization, Claimant reported she had not abused substances for one month. (Tr. 240). During her second admission, Claimant reported she had not had a drink in a week and had not used methamphetamine for two weeks. Despite these alleged periods of sobriety, Claimant still presented with depression and suicidal thoughts.

The Social Security Act provides that an individual would not be considered disabled if alcoholism or drug addiction were a "contributing factor material to the Commissioner's determination that the individual is disabled." Salazar v. Barnhart, 468 F.3d 615, 622-23 (10th Cir. 2006). To that end, the Commissioner must determine whether the individual would still be disabled if he or she stopped using drugs or alcohol. Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001). Careful consideration is to be given to periods of abstinence. Salazar, *supra* at 623. If a claimant's mental impairments cannot be separated from the effects of substance abuse, then the claimant's drug and alcohol addiction is not a contributing factor material to the disability determination. Id. at 624.

Based upon the statements made by the ALJ, this Court cannot

conclude his findings with regard to Claimant's substance abuse are supported by substantial evidence. On remand, the ALJ shall reevaluate Claimant's mental impairments during periods of abstinence from substance abuse.

### *De Facto* Reopening of Prior Application

In her final argument, Claimant contends the ALJ effectively reopened a prior application for Social Security benefits by referencing evidence during the relevant period for that application. Specifically, Claimant previously applied for SSI on July 5, 2002, alleging an onset date of July 26, 1997. (Tr. 75-78). The application was denied on November 15, 2002. (Tr. 48-50). The ALJ never specifically mentioned the prior application in his decision but did state no prior application would be reopened. (Tr. 20).

Discussing evidence from the period encompassed by the prior application alone does not reopen an earlier claim. Hamlin v. Barnhart, 365 F.3d 1208, 1216 n.8 (110th Cir. 2004)(citations omitted). The ALJ specifically limited his consideration and did not reopen the prior application. As such is the case, this Court finds the ALJ did not reopen Claimant's previous application.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

13

applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 10th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE